## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT R. GRUDZINSKI,** | : | |
| **Plaintiff** | : | |
| | | **CIVIL ACTION NO. 4:04-1495** |
| **v.** | : | |
| | | **(MCCLURE, D.J.)** |
| **SOCIAL SECURITY** | : | **(MANNION, M.J.)** |
| **COMMISSIONER,** | | |
| | : | |
| **Defendant** | | |
| | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Social Security Disability Insurance Benefits, ("DIB"), under Title II of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433.

## I.    Procedural Background

The plaintiff filed his present application for benefits on September 4, 2002, in which he alleged that he had become disabled on June 1, 1997, due to anxiety, depression, attention deficit hyperactivity disorder, prostate problems and arthritis. (TR. 10, 45). He subsequently requested a closed period of disability, from December 1, 2001 though March 1, 2003, the date that he returned to substantial gainful employment. The plaintiff had filed a

prior application for disability benefits, for which he had been granted a closed period of disability benefits, June 1, 1997 through September 5, 2001. (TR. 10).

After the claim under consideration was denied initially, (TR. 30-35), the plaintiff's application came on for a hearing before an administrative law judge ("ALJ"), on October 1, 2003. The claimant was not represented at the hearing. In addition to the plaintiff's testimony, the ALJ heard the testimony of Ronald Sholtis, a vocational expert. (TR. 149-177). On January 26, 2004, the ALJ issued a decision which denied benefits. The ALJ concluded that: the plaintiff met the disability status requirements of the Social Security Act as amended, as of December 1, 2001, through March 1, 2003, the closed period of disability, and continued to meet those requirements until December 31, 2004; the plaintiff had not engaged in substantial gainful activity during the closed period; the plaintiff had earned $6,900 for six weeks work during that period which was not SGA (Substantial Gainful Employment);  the medical evidence of record established that the plaintiff had impairments which were considered to be severe, however, the impairments were not severe enough to meet or equal any listed impairments set forth in Appendix 1, Subpart P, Social Security Administration Regulations No. 4.  The ALJ further concluded that although the plaintiff did not retain the functional capacity to perform his past relevant work, he did retain the functional capacity to perform a range of modified work, and that such appropriate work existed in sufficient numbers

2

in the local, regional and national economies. Examples of such work included working as an intake/eligibility worker, low level sales and telemarketing. (TR.14).  As a result, the ALJ concluded that the plaintiff had not been disabled within the meaning of the Act at any time during the closed period December 1, 2001 through March 1, 2003.

The plaintiff filed a request for review with the Appeals Council which was denied on May 7, 2004. (TR. 3-5).  Thus, the ALJ's decision stood as the final decision of the Commissioner.  Currently pending before the court is the plaintiff's *pro* se appeal of the decision of the Commissioner of Social Security, which was filed on July 9, 2004. (Doc. No. 1).

## II.    Disability Determination Process

A five step process is required to determine if an applicant is disabled for purposes of social security disability insurance.  The Commissioner must sequentially determine:  (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work.  See 20 C.F.R. § 404. 1520.

The instant action was ultimately decided at the fifth step of the process, when the ALJ determined that even though the record did show evidence of

3

a mental impairment, the plaintiff was not precluded from all work during the closed period in question. (TR. 15-16). At issue is whether there exists substantial evidence to support the ALJ's determination.

### III.   Evidence of Record

The plaintiff was born on September 19, 1948. (TR. 45, 58). He "completed college with a B.A. and also earned an MBA in 1973." (TR. 13, 69). His past relevant work includes employment as a salesman. (TR. 64).

The plaintiff claims that he was unable to work in any capacity during the closed period in question due to severe anxiety, depression, and attention deficit disorder which prevented him from being able to concentrate for any period of time. (TR. 70). The plaintiff does not appear to claim any other serious physical limitations which would have prevented him from working during the relevant period.

The medical evidence indicates that on November 26, 2002, the plaintiff was examined at the Moses Taylor Hospital Emergency Room. He was complaining of chest pain and stated that he had passed out. He had apparently donated blood earlier in the day. A chest x-ray was read as normal. The diagnosis was syncope. It is unclear what further treatment the plaintiff had, if any, as the hand writing on the ER record is largely illegible. (TR. 92-100).

4

The Agency referred the plaintiff for a psychological evaluation to Anthony A. Galdieri, Ph.D., on January 27, 2003.  Dr. Galdieri performed a battery of psychological testing.  Dr. Galdieri reported that the plaintiff was on time for the appointment, was appropriately dressed and was pleasant and cooperative throughout the interview.  The plaintiff reported that he last worked in 2002, but before that he was not able to work on a regular basis due to depression.  The plaintiff stated that he had not sought treatment for the depression because he had no medical insurance. The plaintiff reported that although in the past he had been treated from time to time for his psychiatric problems, he had never had a psychiatric hospitalization.

Dr. Galdieri found that during the interview the plaintiff would from time to time exhibit tangential thinking, however, his speech flow was average in volume and was appropriate.  He denied any thoughts of wanting to hurt himself or others. His concentration was quite good, although the plaintiff reported that when he is in a work situation, his concentration is very poor. It was noted that the plaintiff has a full scale IQ of 113, with a verbal score of 115 and a performance score of 110. Verbal comprehension scores fell between average to high average and perceptual organization skills were rated as within average range.  Working memory scores fell between average to superior.  The diagnoses were: AXIS I: Depressive disorder (NOS); AXIS II: Schizoid personality trait versus schizoid personality disorder, and AXIS III: Enlarged prostate and hypertension.

5

Dr. Galdieri stated that despite the fact that the plaintiff had earned a Masters Degree, and his cognitive skills appeared to be very well developed, the plaintiff reported that he had trouble maintaining a job.  The plaintiff explained that in the short run he is able to perform well, but that he is unable to maintain any level of productivity.  Dr. Galdieri stated, "There is flavoring that underlies this man's personality, suggestive of the possibility of a schizoid personality disorder or possible a schizotypal characterological make up." (TR. 101-107).

In conjunction with his examination, Dr. Galdieri also completed a Medical Assessment of Ability to do Work-Related Activities (Mental), which is also dated January 27, 2003.  The Assessment indicates that the plaintiff's ability was "good" in the following areas: following work rules, relating to co-workers, dealing with the public, use of judgment, interaction with supervisors and to function independently.  He was assessed to be "fair to poor" in dealing with work stresses; and "poor" in maintaining attention/concentration. The plaintiff was assessed to be "very good" in his ability to understand, remember and carry out simple job instructions; "Good" in his ability to understand, remember and carry out detailed but not complex job instructions, and "fair" in his ability to understand, remember and carry out complex job instructions. (TR. 110).

The Assessment further indicated that the plaintiff's ability to maintain personal appearance was very good; his ability to behave in an emotionally

6

stable manner was good; his ability to relate predictably in social situations was fair to good, and his ability to demonstrate reliability was also fair to good. (TR. 111).

An agency Psychological Review Technique Form dated February 27, 2003, indicated that the plaintiff had a record of a personality disorder, which included persistent disturbances of mood or affect and pathological dependence, passivity or agressivity.  It was determined that the plaintiff had "mild" limitations in the areas of restrictions of daily living and difficulty in maintaining social functioning.  It was felt he had "moderate" difficulties in maintaining concentration, persistence or pace, and that there had been "one or two" episodes of decompensation, each of an extended duration.  The reviewer stated:

> ...[Claimant's] allegations are considered partially credible. Dr. Galdieri's 164 of 1/27/03 states that [claimant] has no ability to maintain attention/concentration.  This is not supported by [claimant's] performance on the WAIS-III...

> ...[Claimant is a 54 y.o. [male] [with] mixed personality disorder.  He currently receives no [treatment] & has no [treatment] hospitalizations.  His condition interferes [with] his ability to maintain attention, concentration, & persistence [with] tasks.  He has limited judgment & tolerance for frustration. However, he remains able to do routine ADLs & self care. He can communicate & relate adequately .  He retains the capacity to perform SGA...

(TR. 112-125; 128).  Another Agency Disability Determination Case Analysis report dated March 8, 2003, states "There is no evidence of physical

7

impairment that can cause a minimal limitation on his work related activities." (TR. 130).

The Agency referred the plaintiff for a Disability Examination (Physical) to John Querci, D.O., which took place on March 21, 2003.  The plaintiff's primary complaint was depression, but he also mentioned to Dr. Querci that he has been diagnosed with ADHD.  He reported that "he cannot concentrate since 1977."  The plaintiff told Dr. Querci that he had undergone a prostate biopsy which was negative; that he had old fractures of both knees and elbows; torn ligaments in both shoulders; torn rotator cuffs in both shoulders, and bilateral carpal tunnel syndrome.

Dr. Querci's physical examination revealed agitated depression "seemingly fairly well controlled" and that the prognosis was good.  As far as any type of physical impairments, there were none.  Dr. Querci stated:

> Functional limitations absolutely none.
>
> ADHD.  Prognosis fair. Functional limitations–I don't think he has any. He was not recommended any medications and he has had this for years and performed quite well as a stock worker when he still had it.
>
> Prostatic problems, probably benign prostatic hypertrophy.
>
>  PROGNOSIS:
>
> Fair.  Functional limitations–absolutely none.

(TR. 131-134).

8

There are also treatment notes from Community Counseling Services of N.E.P.A.  An Identifying Data form dated January 16, 2003, states:

> AXIS I:      Adult ADHD
>
> AXIS II:     None
>
> AXIS III:    None
>
> AXIS IV:    Poor primary support system

(TR. 141).  The records indicate that in February 2003, the plaintiff was prescribed anti-depressant medications.  A treatment note dated June 4, 2003, stated that the plaintiff reported that he felt "a lot better", that he was sleeping better and that he was "doing really well at work."  The plaintiff stated that he was employed in sales work, and that the prior month he was "number two" in sales in his company country wide.  He reported also, however, that he felt he does poorly in his social life.  He related that he had a date, and that he had visited his son.  He stated that he had an old IRS problem, but that he now felt that he was better capable to cope with it.   The reviewer's assessment was "depression, anxiety–improved." (TR. 147-148).

The plaintiff testified at the hearing that he tried to work several times since the prior closed period of disability ended, doing mostly sales work. He stated also that he had been incarcerated because he had passed a bad check.  He explained that he had written the check to purchase tires for his

car so that he could use the car for work.[1] He stated further that each time he would attempt to work, that he would do well at first, but then due to personal problems, he would begin to have problems with concentration which would inevitably lead to deterioration in his work performance. (TR. 158). He said he started having panic attacks and developed nervous tics. (TR. 161). The plaintiff believes that the decompensation which occurred in his ability to maintain a steady work performance was due in large part to the fact that he had no money, and no insurance, and so therefore he could not get the treatment and medications he needed to stay well. (TR. 163, 165).

Ronald Sholtis, a vocational expert. Also testified at the hearing.  The ALJ posed the following hypothetical to him:

> ...[L]et's assume that this hypothetical claimant...really doesn't have any serious physical problems in terms of his health, which would interfere with performing work from a purely exertional standpoint.  In terms of his nonexertional standpoint...our claimant here today in terms of his ability to function, had no serious impediment in terms of restrictions of activities of daily living or difficulties in maintaining social functioning.  But it did have at least a moderate degree in terms of maintaining concentration, persistence and pace.  And the moderate limitation would [also] be in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  The ability to work in

---

[1]The exact period of the plaintiff's incarceration is unclear.  A note from Community Counseling Services dated June 19, 2000, states that the plaintiff reported that he was "recently released from Luzerne County Prison on May 30, 2000. (TR. 142). He filed the prior application for Social Security disability benefits on June 16, 2000, which was granted, after a hearing, on October 12, 2001.  The ALJ mentioned in his decision that the plaintiff had been incarcerated. (TR. 26-28).

coordination or proximity with others, without being distracted by them.  The ability to complete a normal work day or work week without interruptions from psychologically based symptoms.  And to perform at a consistent pace without unreasonable number and length of rest periods...With that type of residual functional capacity, it being applied say to this hypothetical claimant...would there be any occupations to which he might transfer any of the skills he developed in conjunction with his [past ] work?

(TR. 168-169).  Mr. Sholtis replied that there were several jobs which he believed the plaintiff could perform, which included work as an intake interviewer, lower level sales work and telemarketing. (TR. 169).


## IV.   Standard of Review

When reviewing the Commissioner's denial of disability benefits, this court is limited to determining whether the Commissioner's denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is less than a preponderance of the evidence but more than a mere scintilla. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(citing Ventura v. Shalala, 55 F.3d 900, 901(3d Cir. 1995). While it is true that the district court may not engage in fact-finding, it is commonplace for the district court to go beyond the ALJ's decision and look to the record in order to determine whether substantial evidence supported the ALJ's findings. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2004).

11

## V.    Discussion

As noted above, the plaintiff is proceeding *pro se.*  A review of the Complaint, and his Statement of the Case and Argument, indicates that the plaintiff's primary complaint on appeal is that the ALJ's decision is not supported by substantial evidence.  Specifically, the plaintiff claims that the ALJ "ignored" the opinion of Dr. Galdieri that the plaintiff's psychiatric impairments prevented him from working at any kind of employment during the closed period in question.  The plaintiff also claims that the records from his prior application for benefits should have been reviewed by the ALJ, but were not. The plaintiff also believes that he was prejudiced by questions asked by the ALJ relative to a law suit the plaintiff was involved in, which had no bearing whatsoever upon his claim for disability benefits.

The Commissioner argues that the sole issue before the court is whether substantial evidence supports the ALJ's conclusion that, despite his impairments, the plaintiff could perform certain work with restrictions for an 8-hour work day. (Doc. No. 7).

Initially, it is apparent that despite the plaintiff's many statements to the effect that he is claiming only a closed period of disability, December 1, 2001 through March 1, 2003, many aspects of his arguments suggest that he is attempting to reopen and/or relitigate the prior grant of benefits for the closed period June 1, 1997 through September 5, 2001. For example, in his Request for Review of Hearing Decision/Order dated March 23, 2004, the plaintiff

states:

> All evidence was not considered.  My prior file, which was an approved claim, was not available at the hearing and the judge only considered current evidence.  My condition is the same as in the previous claim with mild improvement.

(TR. 6).

The plaintiff also insists in his Statement of the Case that the ALJ's file was incomplete because the ALJ did not review psychiatric treatment records dating as far back as 1994.  He complains, "...absent were the reports from Community Counseling Services which documented a history since 1969 of mental illness." (Doc. No. 27, unpaginated)(emphasis in original).  In a motion for extension of time to file a brief in support of his appeal, the plaintiff requested the court to order Community Counseling Services to produce records "from 1969 forward .." He specifically requests certain reports from 1994. (Doc. No. 14).

The plaintiff is incorrect in his assumption that the prior approved closed period records needed to be reviewed by the ALJ. This is because the plaintiff specifically advised the ALJ at the hearing held on October 1, 2003, that he was requesting a closed period, December 1, 2001 through March 1, 2003.[2] (TR. 156, 165). The prior case records are irrelevant to the closed period

---

[2]The plaintiff originally told the ALJ that he was requesting a closed period of December 1, 2002 through March 1, 2003, however, he had misspoken, and the correct period was clarified as December 1, 2001 through March 1, 2003. (TR. 165).

13

under review.

The court notes that the plaintiff told the ALJ that he believed that he remained disabled after the prior closed period ended due to the fact that he did not receive any type of treatment. He told the ALJ that if he had been in treatment, he could have maintained steady work. (TR. 162). He stated that the reasons he did not get treatment were primarily because he did not have any money or insurance. He told the ALJ that he had only recently restarted treatment within the past five months, which would have been approximately May 2003. The ALJ did have those recent treatment records available to him for consideration. (TR. 141-148).

Additionally, the plaintiff complains that despite being granted benefits for the prior closed period, he received no insurance coverage in connection with that grant of benefits. He apparently believes that he was entitled to ongoing medical insurance secured by the Social Security Administration. As noted, he maintains that it was this lack of insurance, and the concomitant inability to pay for and receive appropriate treatment, which caused his continued disability through March 1, 2003. The plaintiff is mistaken in his assumption that he was entitled to any type of ongoing Social Security health care benefits. The prior closed period ended September 5, 2001.

The plaintiff also argues that the ALJ ignored a report of Dr. Galdieri which the plaintiff believes stated that he was completely disabled. Dr. Galdieri prepared two reports, one dated January 29, 2003, and the other

dated December 22, 2004.  Neither report expresses an opinion that the plaintiff is disabled by his psychiatric impairments.  The plaintiff is correct, however, that the ALJ did not consider the report of December 22, 2004.  It is not in the record. It was generated approximately 11 months after the January 26, 2004 decision in this matter.  The report therefore is irrelevant to the closed period under review.

Furthermore, as noted, there is nothing in Dr. Galdieri's report of January 29, 2003, which supports the plaintiff's claim that Dr. Galdieri expressed an opinion that the plaintiff is totally precluded from any type of work as a result of his combined mental impairments. Even though the report details the results of some objective psychological testing (the WAIS-III test results, for example) it is otherwise largely a compendium of the plaintiff's subjective complaints and observations about himself and his impairments. Other than to note that the plaintiff's continuity of thought was sometimes tangential, Dr. Galdieri's findings were not indicative of an individual who is incapacitated by mental illness. In fact, Dr. Galdieri stated:

> In regards to his employment history, he seems to have no real insight as to what has happened to him in terms of the job market.  He does say in somewhat vague terms that his depression and poor concentration seemed to interfere with his ability to maintain employment.  He believes that he worked full time from 1970-1994, and since that time, the jobs that he did hold were piecemeal...

> ...He reports that in the past he has never had any difficulty dealing with supervisors, co-workers, or the public.  He has been arrested but it is interesting that he was able to file his own lawsuit and win it...

(TR. 104-107).  There is no merit, therefore, to the plaintiff's claim that the ALJ

"ignored" evidence of his disability in the form of Dr. Galdieri's reports.

There is also no merit to the plaintiff's complaint that the ALJ did not take into consideration the prior ALJ decision of October 12, 2001, which granted the June 1, 1997 through September 5, 2001, closed period of disability. That decision is in the record, and was referred to by the ALJ in his decision. (TR. 10, 26-29). Even if the ALJ had failed to take the prior decision into consideration, there would be no error because that decision is not relevant to the application under review.

There is also no merit to the plaintiff's claim that he was prejudiced by certain questions the ALJ asked him regarding a lawsuit the plaintiff allegedly successfully brought and prosecuted, *pro se,* against the Luzerne County Prison. It is true that the ALJ did inquire as to what happened to the alleged award of damages in that case, but there is nothing in the decision to indicate that the fact of the lawsuit influenced the ALJ one way or the other. The ALJ stated regarding the lawsuit, "He eventually won a quarter of a million dollars award but stated he did not feel he will ever collect that money." (TR. 12). The ALJ did not draw attention to the fact that the plaintiff brought the claim *pro se*, or in any other manner imply that the lawsuit had any bearing upon the plaintiff's ability to concentrate or maintain a sustained effort towards a goal.

The plaintiff makes many allegations that the evidence relied upon by the ALJ was either flawed, produced by unqualified individuals, or misinterpreted by the ALJ.  The following excerpt from the plaintiff's reply to

16

the respondent's response is representative of these complaints:

> ...[T]he defendants talk a little about Dr. <u>Galdieri's</u> examination.  The defendant raises the fact that I can <u>dress</u>, <u>pay</u> <u>bills</u>, etc.  Usually to any extent any person can do this.  The fact is <u>Dr. Galdieri's Diagnosis</u> is:

> <u>Bipolar    Disorder</u>  II  with  Generalized  <u>Anxiety</u> <u>Disorder</u>...<u>Schizoid Personality</u> and <u>Psoriasis</u>, enlarged prostate, elevated lipids and past history of numerous surgeries.

> <u>Psychological stressors</u>: Financial, Chronic mental health issues.

> Dr. Galdieri also puts a Global Assessment of Functioning (<u>GAF</u>) at <u>50</u> which indicates a <u>serious</u> impairment of social, occupational and school functioning.  Also on page 6 of Dr. Galdieri's report he states there is <u>little or no ability</u> to deal with work stresses. He also states there is <u>little or no ability</u> to maintain attention or concentration.

(Doc. No. 31, p.4)(emphasis in original).

The plaintiff is referring to Dr. Galdieri's report of December 22, 2004, which as noted above, did not exist at the time of the decision under review. Furthermore, even if Dr. Galdieri made such diagnoses and/or statements at some point, that fact, in and of itself, does not entitle the plaintiff to Social Security benefits. Whatever the diagnosis, the claimant must still provide sufficient evidence that he has met the Act's statutory definition of disability. <u>Petition of Sullivan,</u> 904 F.2d 826, 845 (3d Cir. 1990).

In order to qualify for Social Security disability benefits a claimant must demonstrate that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. A. 423 (d)(1)(A)(1991); Heckler v. Campbell, 461 U.S. 458, 460 (1983).  Furthermore, the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion. Craig v. Chater, 76 F.3d 585, 590 n. 2 (4th Cir. 1966).   An ALJ may discredit a physician's opinion on disability that was premised largely on a claimant's own account and symptoms and limitations when the claimant's complaints are otherwise properly discounted. Fair v. Bowen, 885 F. 2d 597, 605 (9th Cir. 1989).

The ALJ stated regarding the plaintiff's perception of his mental limitations:

> During the requested closed period of December 1, 2001, through March 1, 2003, the claimant's problems were not totally disabling to him.  He was not taking medications or receiving treatment during this period, nor did he have any hospitalizations. There is no evidence to establish that the claimant met or equaled any listing of impairments during the closed period...

> ...In reaching the determination that the claimant is able to perform work during the closed period, as testified to by the vocational expert, the claimant's subjective allegations of limitations have been carefully considered pursuant to the criteria set forth in Social Security Ruling 96-7p and 20 C.F.R. 404.1529. In this regard, his pain and limitations are subjective and not susceptible to measurement by reliable techniques, therefore, the extent to which his limitations affect the individual's functional ability to do basic work activities is difficult to evaluate.

> Nevertheless, in this case, while it is doubtless true that the claimant is prohibited by his overall condition from performing

certain kinds of work; the claimant was not precluded from all work. Based on the record...he lives alone in a room, and performs all his activities of daily living.  He goes shopping, changes the bed linens, watches television, as well as takes care of his personal hygiene and has no physical impairments.  There is no medical or psychological opinion in this case which finds that the claimant is totally unable to work.

(TR. 14, 15).

The ALJ did not find the plaintiff's testimony entirely credible as it pertained to the plaintiff's perceived inability to concentrate and maintain a minimum productivity level due to his depression and ADHD diagnoses. Credibility determinations as to a claimant's testimony regarding his limitations are for the Administrative Law Judge to make. VanHorn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the Administrative Law Judge's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984). The ALJ gave precise reasons for the weight he gave to the plaintiff's testimony, which are valid.  Most notably, the ALJ referenced the Agency's Psychiatric Review Technique Assessment prepared by Dr. Mascetti dated January 27, 2003. (TR. 112-129).  That assessment indicated that the plaintiff had only "mild" restrictions of daily living or difficulties in maintaining social functioning; "moderate" limitations as far as maintaining concentration, persistence, or pace, and that there were only one or two episodes of decompensation of extended duration. (TR. 15). The ALJ noted correctly that these findings did

19

not satisfy, or equal, the criteria of listing 12.08 relating to personality disorders.

The plaintiff disputes that he was capable of working, even if the work did not require sustained periods of concentration.  He writes in his Statement of the Case:

> It is clear that most people can transfer some skills to a job other than what they were trained for but can they sustain it! It is also clear that if one thinks about it you can find a job for anyone. A person with an I.Q. of 10 can be a movie extra. A comatized person can test mattresses.

(Doc. No. 27, unpaginated)(emphasis in original).

Our review, however, indicates that there are inconsistencies between the record on the whole, and the plaintiff's testimony regarding his mental impairments and their impact upon his ability to work. Although it is undisputed that Dr. Galdieri noted that the plaintiff's thoughts did appear to be tangential, his findings for the most part demonstrate that the plaintiff is capable of sustained gainful activity. Dr. Galdieri noted that during the course of the evaluation, especially performance on the IQ testing, the plaintiff's concentration was "quite good" although the plaintiff stated that his concentration is poor "in a work type environment."  Dr. Galdieri noted that the plaintiff's areas of strength included his ability to learn an unfamiliar task within a given time period and visual motor dexterity, and that his weaknesses were in dealing with the ability to nonverbally size up a social situation, nonverbal abstract reasoning, and nonverbal concept formation.  As noted above, Dr.

20

Galdieri did not render an opinion that the plaintiff was incapable of working. In fact, Dr. Galdieri stated he believed that, if granted benefits, the plaintiff "is capable of managing benefits in a competent manner on his own behalf." (TR. 107).

Furthermore, the Agency intake clerk who did the initial interview with the plaintiff when he filed this claim for benefits wrote:

> The claimant's concentration did not affect his answering questions during the disability interview.  He spoke very well.  Robert was well groomed & he dressed neat, clean and casual.  He appears to be an intelligent individual. (TR. 60).

The court notes further that the plaintiff had no difficulty in representing himself at the hearing in this matter, and that the pleadings he has filed in connection with his appeal appear to be complete and are adequate for meaningful review.  It is also noteworthy that there is no record that any health care professional ever took the plaintiff off of work, or that he was ever terminated from a job due to poor performance.  It appears that the plaintiff stopped working whenever he felt that the stresses of a particular job caused him to become overwhelmed.

In summary, there is no medical opinion or evidence to support the plaintiff's claim that he was completely disabled from any and all work as a result of his combined mental impairments for the closed period December 1, 2001 through March 1, 2003.  As a result, the ALJ did not err in concluding that the plaintiff did not meet the Act's statutory requirements to show

disability, and the decision should not be disturbed on appeal.

## VI.  Recommendation

On the basis of the foregoing, **IT IS RECOMMENDED** that the plaintiff's appeal of the decision of the Commissioner (Doc. No. 1), be **DENIED**.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
United States Magistrate Judge

Dated: August 26, 2005

O:\shared\REPORTS\2004 Reports\04-1495.wpd